[Cite as *State v. Hooper*, 2022-Ohio-2990.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,              CASE NO. 1-21-35

    v.

CHEYENNE N. HOOPER,             O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR2019 0491

**Judgment Affirmed**

**Date of Decision: August 29, 2022**

APPEARANCES:

    *Stephen T. Wolfe* **for Appellant**

    *Jana E. Emerick* **for Appellee**

**ZIMMERMAN, P.J.**

{¶1} Defendant-appellant, Cheyenne N. Hooper ("Hooper"), appeals the July 27, 2021 judgment entry of sentence of the Allen County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} L.S., born July 18, 2018, is the minor child of Hooper and Ebin Stratton ("Stratton"). Following her birth, L.S. was diagnosed with torticollis (neck tightness), which resulted in her developing plagiocephaly (a flattening of the skull requiring her to wear a helmet to re-shape her head).

{¶3} This case stems from an incident on March 13, 2019 during which L.S. incurred a "constellation" of life-threatening injuries, including a subdural hemorrhage, which caused a midline shift; edema in the tissue and muscle of her neck, which was suggestive of hyperflexion and a contusion-type injury; and intraretinal hemorrhages. (May 24-28, 2021 Tr., Vol. II, at 381-382, 387).

{¶4} On the morning of March 13, 2019, Stratton left the home that he shared with Hooper and L.S. for work. At approximately 12:00 p.m., Stratton received a frantic phone call from Hooper indicating that L.S. had fallen and hurt her neck. In response to a 911 emergency call, emergency responders arrived at the residence and found L.S. unresponsive. As a result, the emergency responders rushed L.S. by ambulance to the emergency department of (former) St. Rita's Hospital ("St. Rita's"). Hooper reported to the emergency responders that L.S. had fallen off the

(adult) bed and hit her head. Fortunately, following L.S.'s arrival at the emergency department of St. Rita's, L.S. "was much more responsive" "but not to the extent of a normal child." (May 24-28, 2021 Tr., Vol. II, at 215, 221). However, because of the extent of L.S.'s injuries, the emergency-department staff of St. Rita's contacted Allen County Children Services ("ACCS") to report L.S.'s condition.

{¶5} Immediately following Hooper's frantic call, Stratton left work to attend to L.S. After Stratton arrived to the emergency department of St. Rita's, Stratton was informed that L.S. needed to be intubated and sent by life flight to the emergency department of Nationwide Children's Hospital ("Nationwide") in Columbus, Ohio "[a]s a Level I neuro trauma alert." (*Id.* at 273).

{¶6} Following L.S.'s arrival at the emergency department of Nationwide, Hooper described L.S.'s trauma to Lauren Lathem ("Lathem"), a clinical medical social worker with Nationwide. Specifically, Hooper informed Lathem that L.S. "had just recently started having * * * lots of movement, as a typical seven month old," "that [Hooper] had sat her on the bed"; Hooper "turned her head for just a few moments and that [L.S.] had fallen off the bed" approximately "two and a half feet" and "that she landed on the carpet." (*Id.* at 278). According to Lathem, Hooper reported that L.S. "cried * * * so she sat her on the bed and that [L.S.] then tilted her head backwards and described her eyes * * * as halfway closed." (*Id.*). Hooper reported that she had been previously diagnosed with anxiety and postpartum

depression; however, she further reported that she was not taking the medication as prescribed for her conditions. Moreover, Hooper revealed that she underwent a breast-augmentation surgery on March 6, 2019. According to Hooper, even though she was prescribed pain mediation following the surgery, she stopped taking the medication earlier that week.

{¶7} Based on L.S.'s assessment at Nationwide, emergency-department physicians ordered a "non-accidental trauma workup" and Lathem contacted ACCS and the Lima Police Department to report that L.S.'s injuries were not consistent with Hooper's explanation as to how the injuries occurred and because "they didn't think that her falling two and a half feet could have caused [her] injur[ies]." (*Id.* at 259, 280); (May 24-28, 2021 Tr., Vol. II, at 515). Importantly, Dr. Catherine Huber ("Dr. Huber"), a child-abuse pediatrician with Nationwide, who treated L.S., testified that Nationwide medical staff determined that L.S. suffered "abusive head trauma and inflicted injury." (May 24-28, 2021 Tr., Vol. II, at 383). In other words, Dr. Huber testified that Nationwide medical staff concluded that L.S.'s injuries were "not consistent with the mechanism reported by" Hooper. (*Id.* at 389). Due to the extent of her injuries, L.S. was not released from Nationwide until March 26, 2019. Hooper was alone with L.S. at the time L.S. sustained her injuries.

{¶8} On December 12, 2019, the Allen County Grand Jury indicted Hooper on Count One of felonious assault in violation of R.C. 2903.11(A)(1), (D)(1)(a), a

second-degree felony, and Count Two of endangering children in violation of R.C. 2919.22(B)(1), (E)(2)(d), a second-degree felony. Hooper filed a written plea of not guilty to the counts alleged in the indictment on December 20, 2019.

{¶9} The case proceeded to a jury trial on May 24-28, 2021. On May 28, 2021, the jury found Hooper guilty of Count Two but not guilty of Count One. On July 22, 2021, the trial court sentenced Hooper to eight years in prison.[1] (Doc. No. 155).

{¶10} Hooper filed her notice of appeal on August 18, 2021. (Doc. No. 162). She raises three assignments of error for our review. For ease of our discussion, we will begin by discussing Hooper's second and third assignments of error together, followed by her first assignment of error.

### Assignment of Error No. II

**The Evidence Presented at Trial was Insufficient to Support the Convictions**

### Assignment of Error No. III

**The Jury's Verdicts Were Against the Manifest Weight of the Evidence**

{¶11} In her second and third assignments of error, Hooper argues that her endangering-children conviction is based on insufficient evidence and is against the manifest weight of the evidence. Specifically, Hooper contends that the State

---

[1] The trial court filed its judgment entry of sentence on July 27, 2021.

presented insufficient evidence that she was the person who recklessly "abused [L.S.] or inexcusably failed to act to protect her." (Appellant's Brief at 11). Further, Hooper contends that her endangering-children conviction is against the manifest weight of the evidence because the jury lost its way in concluding that L.S.'s injuries were the result of abuse.

*Standard of Review*

{¶12} Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997). Thus, we address each legal concept individually.

{¶13} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v.*

*Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, ¶ 25 (1st Dist.). *See also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19 ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *Thompkins* at 386.

{¶14} On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

*Sufficiency of the Evidence Analysis*

**{¶15}** We begin by addressing Hooper's sufficiency-of-the-evidence argument as it relates to her endangering-children conviction. Here, Hooper argues only that there is insufficient evidence that she was the person who recklessly abused L.S.—that is, Hooper contends that "this case was devoid of even circumstantial evidence that there was any action or *inexcusable inaction* by" her. (Emphasis added.) (Appellant's Brief at 11).

**{¶16}** As an initial matter, contrary to Hooper's suggestion, "inexcusable inaction" is not an element of endangering children under R.C. 2919.22(B)(1). Instead, the criminal offense of endangering children under R.C. 2919.22(B)(1) provides, in its relevant part, "that no person shall abuse a child under eighteen years of age." *State v. Powe*, 9th Dist. Summit No. 21026, 2002-Ohio-6034, ¶ 27. *See also* R.C. 2919.22(B)(1). "When a violation of R.C. 2919.22(B)(1) results in serious physical harm to the child, it is felony of the second degree." *State v. Pendland*, 7th Dist. Mahoning No. 19 MA 0088, 2021-Ohio-1313, ¶ 20, citing R.C. 2919.22(B)(1), (E)(2)(d).

**{¶17}** The culpable-mental state of endangering children under R.C. 2919.22(B) requires the defendant to have acted recklessly. *State v. Troglin*, 3d Dist. Union No. 14-04-41, 2005-Ohio-6562, ¶ 38, fn. 2. *See also State v. Hoffman*, 9th Dist. Summit No. 26084, 2013-Ohio-1021, ¶ 23 ("'[W]hen a defendant is

charged with endangering children under [R.C. 2919.22(B)(1)], the State must prove recklessness as an essential element of the offense.'"), quoting *State v. Jon*es, 9th Dist. Summit No. 25986, 2012-Ohio-4256, ¶ 6; *State v. Adams*, 62 Ohio St.2d 151 (1997), paragraph one of the syllabus.

> A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

R.C. 2901.22(C).

{¶18} Thus, because they are the only elements that Hooper challenges on appeal, our sufficiency-of-the-evidence review will be only the evidence supporting the issue of identity as to Hooper's conviction and the abuse-element of endangering children under R.C. 2919.22(B)(1). "'It is well settled that in order to support a conviction, the evidence must establish beyond a reasonable doubt the identity of the defendant as the person who actually committed the crime at issue.'" *State v. Missler*, 3d Dist. Hardin No. 6-14-06, 2015-Ohio-1076, ¶ 13, quoting *State v. Johnson*, 7th Dist. Jefferson No. 13 JE 5, 2014-Ohio-1226, ¶ 27, citing *State v. Collins*, 8th Dist. Cuyahoga No. 98350, 2013-Ohio-488, ¶ 19, and *State v. Lawwill*, 12th Dist. Butler No. CA2007-01-014, 2008-Ohio-3592, ¶ 11.

**{¶19}** In support of her sufficiency-of-the-evidence challenge, Hooper argues that a rational trier of fact could not have found that she was the person who recklessly "physically abused [L.S.]" or that L.S.'s injuries were the result of abuse. (Appellant's Brief at 11). The record belies Hooper's argument. *See Pendland*, 2021-Ohio-1313, at ¶ 28 (concluding that, "while no witness testified they actually saw Appellant commit the abuse, there is a great deal of circumstantial evidence to support Appellant's convictions"). Indeed, the State may establish the elements of a crime with direct or circumstantial evidence. *State v. Miller*, 8th Dist. Cuyahoga No. 103591, 2016-Ohio-7606, ¶ 60, citing *State v. Durr*, 58 Ohio St.3d 86, 92 (1991). Likewise, since the intent of a person generally "cannot be proven by direct evidence, thus proof of intent may be shown from circumstantial evidence." *State v. Cole*, 3d Dist. Seneca No. 13-10-30, 2011-Ohio-409, ¶ 23. *See also State v. Lee*, 7th Dist. Mahoning No. 14 MA 120, 2016-Ohio-649, ¶ 52 ("As with any other element, recklessness can be established by circumstantial evidence.").

**{¶20}** "'Circumstantial evidence' is the 'proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning or other facts.'" *Lawwill* at ¶ 12, quoting *State v. Wells*, 12th Dist. Warren No. CA2006-02-029, 2007-Ohio-1362, ¶ 11, citing *State v. Griesheimer*, 10th Dist. Franklin No. 05AP-1039, 2007-Ohio-837, ¶ 26. Circumstantial evidence has no less probative value than direct evidence. *Griesheimer* at ¶ 26, citing *Jenks* at paragraph one of the

syllabus. *See also State v. Heinish*, 50 Ohio St.3d 231, 238 (1990) ("This court has long held that circumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt."); *Miller* at ¶ 61 (stating that "circumstantial evidence alone is sufficient to support a conviction"), citing *State v. Coleman*, 8th Dist. Cuyahoga No. 102966, 2016-Ohio-297, ¶ 22. "'[A]ll that is required of the jury is that it weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt.'" *Miller* at ¶ 61, quoting *Jenks* at 272. "'"Circumstantial evidence is not only sufficient, but may also be more certain, satisfying, and persuasive than direct evidence."'" *Id.*, quoting *State v. Hawthorne*, 8th Dist. Cuyahoga No. 96496, 2011-Ohio-6078, ¶ 9, quoting *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330, 81 S.Ct. 6 (1960).

{¶21} Importantly, "[c]ircumstantial evidence demonstrating that a person caused serious brain injuries to a child exists where the child is alone with the accused during the timeframe in which the injury was likely sustained." *Pendland* at ¶ 28. *See also Nasser*, 2003-Ohio-5947, at ¶ 73 ("Furthermore, it is not unusual that evidence of shaken baby syndrome may be primarily circumstantial, especially where a child is in the sole custody of one adult at the time the injuries are sustained.").

{¶22} Based on our review of the record, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Hooper was the person who committed the offense at issue in this case—that is, that Hooper was the person who recklessly abused L.S, which resulted in serious physical harm.

{¶23} At trial, the State presented the testimony of ten witnesses in support of its case of endangering children. According to the State's evidence, L.S. was normal and in a good state of health the morning of March 13, 2019, when Stratton left L.S. alone with Hooper to go to work. *Compare State v. Garcia*, 10th Dist. Franklin No. 03AP-384, 2004-Ohio-1409, ¶ 24 (noting that the State presented evidence that the child "was normal and in a good state of health" when her mother left her alone with Garcia); *State v. Nasser*, 10th Dist. Franklin No. 02AP-1112, 2003-Ohio-5947, ¶ 72 (finding that the State presented evidence that the child "was a healthy three-and-one-half-year-old girl at the time her mother left her in defendant's care"). Importantly, Hooper does not dispute that she was alone with L.S. at the time L.S. became injured or that L.S. suffered serious physical harm. *See State v. Dawson*, 7th Dist. No. 15 MA 0118, 2017-Ohio-2957, ¶ 51 (concluding that "undisputed evidence indicated Appellant was the only person alone with the child"). Consequently, the jury could infer in this case that L.S. suffered life-threatening injuries while she was in Hooper's sole custody. *Accord State v. Villarreal*, 12th Dist. Butler No. CA2004-02-035, 2005-Ohio-1924, ¶ 22 ("In this

case, however, from the evidence it was reasonable to infer that N.E. was injured while he was in the sole custody of appellant."); *Lee*, 2016-Ohio-649, at ¶ 51 ("Here, the evidence permits a reasonable inference that the child suffered life-threatening injuries after the mother left for work while in Appellant's sole care.").

**{¶24}** Furthermore, Drs. Huber and Randall Schlievert ("Dr. Schlievert"), director of the child abuse program at the (former) Mercy Health Children's Hospital in Toledo, Ohio, testified that L.S.'s constellation of life-threatening injuries were the result of abusive head trauma and inflicted injury. *Accord Nasser* at ¶ 72 ("All four doctors testified that, based upon the multiple injuries, as well as the retinal hemorrhages, the injuries sustained to Layla were not accidental, and had been intentionally caused.").

**{¶25}** Likewise Detective Matthew Woodworth ("Detective Woodworth") of the Lima Police Department, who investigated the case, testified that Nationwide Children's Hospital contacted the Lima Police Department to report that L.S.'s injuries were not consistent with the way in which Hooper reported that L.S. was injured. Consequently, as part of his investigation, Detective Woodworth testified that he measured the bed from which Hooper alleged that L.S. fell, and that his measurement revealed a height of approximately two-and-one-half feet. (*See* State's Ex. 22). He further testified that the bedroom was carpeted. In sum, Detective Woodworth testified that his investigation revealed that L.S. was alone

with Hooper at the time of her injury and that her injury was not the result of an accident. Therefore, since L.S. suffered the life-threatening injuries while she was in Hooper's sole custody, the jury could infer that L.S.'s injuries were the result of abuse.

{¶26} Accordingly, viewing the evidence in most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that Hooper was the person who recklessly abused L.S., which resulted in serious physical harm. Thus, we conclude that Hooper's endangering-children conviction is based on sufficient evidence. *See Lee*, 2016-Ohio-649, at ¶ 54.

{¶27} Having concluded that Hooper's endangering-children conviction is based on sufficient evidence, we next address Hooper's argument that her endangering-children conviction is against the manifest weight of the evidence. Hooper contends that her endangering-children conviction is against the manifest weight of the evidence because the jury lost its way in concluding L.S.'s injuries were the result of abuse. Specifically, Hooper contends that the jury lost its way in believing the State's expert witness' testimony over her expert witness's testimony. *Compare Dawson*, 2017-Ohio-2957, at ¶ 51-52 (concluding that, even though, the case presented "a battle of the experts and doctors [where] each side presented a plausible theory," the jury did not lose its way "[i]n resolving the conflicting expert opinions").

**{¶28}** However, we will not second-guess the weight that the jury assigned to the evidence that L.S.'s injuries were the result of abuse or the jury's witness-credibility determination unless it is clear that the jury lost its way and a miscarriage of justice occurred. *See State v. Mitchell*, 8th Dist. Cuyahoga No. 93076, 2010-Ohio-520, ¶ 20. *See also State v. Banks*, 8th Dist. Cuyahoga No. 96535, 2011-Ohio-5671, ¶ 13 ("Although we review credibility when considering the manifest weight of the evidence, the credibility of witnesses is primarily a determination for the trier of fact."), citing *DeHass*, 10 Ohio St.2d 230, at paragraph one of the syllabus. "The trier of fact is best able 'to view the witnesses and observe their demeanor, gestures[,] and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *Id.*, quoting *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 24.

**{¶29}** "When examining witness credibility, 'the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact.'" *In re N.Z.*, 11th Dist. Lake Nos. 2010-L-023, 2010-L-035, and 2010-L-041, 2011-Ohio-6845, ¶ 79, quoting *State v. Awan*, 22 Ohio St.3d 120, 123 (1986). "'"A verdict is not against the manifest weight of the evidence because the [jury] chose to believe the State's witnesses rather than the defendant's version of the events."'" *State v. Missler*, 3d Dist. Hardin No. 6-14-06, 2015-Ohio-1076, ¶ 44, quoting *State*

*v. Bean*, 9th Dist. Summit No. 26852, 2014-Ohio-908, ¶ 15, quoting *State v. Martinez*, 9th Dist. Wayne No. 12CA0054, 2013-Ohio-3189, ¶ 16.

**{¶30}** Furthermore, "[a] defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial." *State v. Campbell*, 10th Dist. Franklin No. 07AP-1001, 2008-Ohio-4831, ¶ 23, citing *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21. The trier of fact ""'may take note of the inconsistencies and resolve or discount them accordingly, [but] such inconsistencies do not render [a] defendant's conviction against the manifest weight or sufficiency of the evidence.'"" *State v. Ealy*, 10th Dist. Franklin No. 15AP-600, 2016-Ohio-1185, ¶ 19, quoting *State v. Samatar*, 152 Ohio App.3d 311, 2003-Ohio-1639, ¶ 113 (10th Dist.), quoting *State v. Craig*, 10th Dist. Franklin No. 99AP-739, 2000 WL 297252, *3 (Mar. 23, 2000).

**{¶31}** After reviewing the evidence, the jury did not lose its way and create such a manifest miscarriage of justice in its expert-witness-credibility determination, or by concluding that L.S.'s injuries were the result of abuse, requiring that we reverse Hooper's convictions and order a new trial. Indeed, the jury was able to weigh the State's expert witness' testimony, who thoroughly described how they arrived at their conclusion that L.S.'s injuries were the result of abusive head trauma and inflicted injury, against Hooper's expert witness's testimony.

{¶32} As we outlined in our sufficiency-of-the-evidence analysis, Drs. Huber and Schlievert—the State's expert witnesses—concluded that L.S.'s injuries were the result of abusive head trauma and inflicted injury. Hooper's expert-medical witness, Dr. Daniel Adler ("Dr. Adler"), a pediatric neurologist, testified that L.S.'s injuries *could* have been the result of an accidental fall.

{¶33} Significantly, Dr. Adler testified that L.S.'s pre-existing medical conditions could have contributed to her injuries—that is, Dr. Adler testified that L.S. is "an abnormal child with numerous anatomical abnormalities that exaggerated her risk of being injured" and that "accidental trauma" "could result in all the problems that are defined by the medical records." (May 24-28, 2021 Tr., Vol. IV, at 799). In other words, Dr. Adler concluded that L.S.'s injuries could have been the result "of an amount of force that's inconsequential." (*Id.* at 794). Specifically, Dr. Adler testified that L.S.'s medical records reflect that she sustained a head injury "at some other point in the past * * * that created this fluid"—"blood of multiple ages"—"in the skull before March 13, 2019." (*Id.* at 777, 785). According to Dr. Adler, this prior-head injury "would be a factor in increasing the risk that the injury described, meaning the fall from the bed, would have been more likely to cause bleeding * * * ." (*Id.* at 778). Dr. Adler further testified that L.S. "has an exaggerated risk of abnormal head movement in response to an applied force" because of her pre-existing medical conditions. (*Id.* at 788). He also testified

that, based on L.S.'s pre-existing medical conditions, "those forces were sufficient in this case to cause the retinal hemorrhages that are present." (*Id.* at 793).

**{¶34}** Likewise, the jury heard Dr. Adler's explanation for the difference in his opinion from Dr. Huber's medical opinion. That is, Dr. Adler stated that Dr. Huber rendered her conclusion without offering a specific explanation as to how she arrived at her conclusion. Nevertheless, the jury was able to compare Dr. Adler's medical opinion against Dr. Huber's and Dr. Schlievert's medical opinions. Specifically, Drs. Huber and Schlievert described how the evidence in the record refutes Hooper's story that L.S.'s injuries were caused by a short fall from the bed. Importantly, based on her assessment of L.S., Dr. Huber concluded that "[t]he constellation of injuries that [L.S.] sustained [were] not consistent with the history of a simple fall off the bed and was most concerning for abusive head trauma and inflicted injury." (May 24-28, 2021 Tr., Vol. II, at 381). (*See also* State's Ex. 19).

**{¶35}** Furthermore, Dr. Schlievert testified that he concluded, based on his training and experience, that it was improbable that L.S.'s injuries were caused by a short fall from the bed as reported by Hooper. Specifically, Dr. Schlievert testified that the constellation of injuries sustained by L.S. are "not common from a short fall * * * ." (May 24-28, 2021 Tr., Vol. III, at 613-614). That is, Dr. Schlievert testified that L.S.'s constellation of injuries do not reflect the type of injuries typically sustained by children who fall out of a bed. He further testified that L.S. "hitting

her head on the bedframe" would not explain her injuries since "[i]t would actually decrease the amount of energy once she hit the floor because there had already been a stop on the way down, so it would actually be a series of two shorter falls." (*Id.* at 615).

**{¶36}** Further, the jury heard that the emergency-department staff of St. Rita's contacted ACCS and that Lathem contacted ACCS and Detective Woodworth at the Lima Police Department to report that L.S.'s injuries were not consistent with the way in which Hooper reported that L.S. was injured. Likewise, the jury heard Detective Woodworth's conclusion that L.S.'s injuries were not the result of an accident.

**{¶37}** Moreover, the jury was able to compare the State's witnesses' testimony against the testimony that Hooper presented in her defense (including her own testimony), and it is well within the providence of the trier of fact to determine a witness's credibility in making a statement including the prerogative to find a witness not to be truthful. *See State v. Voll*, 3d Dist. Union No. 14-12-04, 2012-Ohio-3900, ¶ 27. Consequently, after reviewing the entirety of the record, Hooper's arguments concerning the weight of the evidence are unpersuasive. Therefore, the jury did not clearly lose its way and create such a manifest miscarriage of justice that Hooper's conviction must be reversed and a new trial ordered. Accordingly,

Hooper's endangering-children conviction is not against the manifest weight of the evidence.

**{¶38}** Hooper's second and third assignments of error are overruled.

## Assignment of Error No. I

## Appellant was Prejudiced by Ineffective Assistance of Counsel

**{¶39}** In her first assignment of error, Hooper argues that she was denied her right to effective assistance of counsel. Specifically, Hooper argues that her trial counsel was ineffective for failing to provide reciprocal discovery to the State as required by Crim.R. 16, which resulted the in exclusion of evidence that she planned to use in her defense. Similarly, Hooper contends that her trial counsel was ineffective for failing to request a continuance in order to permit full discovery.

*Standard of Review*

**{¶40}** A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 687.

Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989), quoting *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976), *vacated in part on other grounds*, 438 U.S. 910, 98 S.Ct. 3135 (1978).

{¶41} "Prejudice results when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Liles*, 3d Dist. Allen No. 1-13-04, 2014-Ohio-259, ¶ 48, quoting *Bradley* at 142, citing *Strickland* at 691. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Bradley* at 142 and citing *Strickland* at 694.

*Analysis*

{¶42} Crim.R. 16 provides the discovery rules for criminal proceedings. *State v. Engle,* 166 Ohio App.3d 262, 2006-Ohio-1884, ¶ 7 (3d Dist.). "Crim.R. 16(H) specifies that '[i]f the defendant serves a written demand for discovery or any other pleading seeking disclosure of evidence on the prosecuting attorney, a reciprocal duty of disclosure by the defendant arises without further

demand by the state.'" *State v. Athon*, 136 Ohio St.3d 43, 2013-Ohio-1956, ¶ 19, quoting Crim.R. 16(H). *See also State v. Ferricci*, 8th Dist. Cuyahoga No. 110208, 2022-Ohio-1393, ¶ 34 (discussing the defendant's reciprocal duty of discovery under Crim.R. 16). Likewise, "[o]nce discovery is initiated by demand of the defendant, all parties have a continuing duty to supplement their disclosures." Crim.R. 16(A).

{¶43} "Additionally, Crim.R. 16(K) provides that an expert witness for either the state or the defense 'shall prepare a written report summarizing the expert's testimony, findings, analysis, conclusions, or opinion, and shall include a summary of the expert's qualifications.'" *Ferricci* at ¶ 35, quoting Crim.R. 16(K). The rule further provides that such written report and a summary of qualifications shall be subject to disclosure no later than 21 days prior to the start of trial and that the "[f]ailure to disclose the written report to opposing counsel shall preclude the expert's testimony at trial." Crim.R. 16(K).

{¶44} The failure to comply with Crim.R. 16 is governed by Crim.R. 16(L)(1) which provides, in its relevant part:

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances.

Crim.R. 16(L)(1). "'[I]n determining the appropriate sanction, the trial court must make an inquiry into the circumstances of the discovery violation.'" *State v. Stiles*, 3d Dist. Allen No. 1-08-12, 2009-Ohio-89, ¶ 45, quoting *Engle* at ¶ 8, citing *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 511 (1987), paragraph two of the syllabus. "Further, 'the trial court "must impose the least severe sanction that is consistent with the purpose of the rules of discovery."'" *Id.*, quoting *Engle* at ¶ 8, quoting *Papedelis* at paragraph two of the syllabus.

{¶45} Generally, a trial court retains "'wide discretion in determining sanctions for discovery violations.'" *State v. Gibson*, 3d Dist. Allen No. 1-06-74, 2007-Ohio-3345, ¶ 12, quoting *Engle* at ¶ 7. However, "Crim.R. 16(K) removes a trial court's discretion and requires the exclusion of expert testimony when a written report [is] not disclosed in accordance with the rule." *State v. Boaston*, 160 Ohio St.3d 46, 2020-Ohio-1061, ¶ 60.

{¶46} Here, Hooper contends that her trial counsel was ineffective for failing to provide L.S.'s medical records to the State, which resulted in their exclusion from evidence at trial. Specifically, Hooper contends that the omission of those records "eliminated one of [her] main defenses – the argument that [L.S.'s] lack of long-term issues was indicative of an accidental injury." (Appellant's Brief at 8). Additionally, Hooper contends that her trial counsel was ineffective for failing to provide the State with Hooper's medical records that Dr. James Apesos ("Dr.

Apesos"), a plastic surgeon who testified as an expert witness in her defense, reviewed in preparing his report. Hooper argues that her trial "counsel provided [these] records to the State during the trial upon which [her] theory of innocence relied and that they intended to reference in expert testimony" but that the trial court denied their admission "as in violation of the twenty-one (21) day deadline of Crim.R.16(K) * * * ." (Appellant's Brief at 8).

{¶47} In this case, the trial court inquired about the circumstances surrounding the discovery violations. As to L.S.'s medical records, the trial court determined that Hooper's trial counsel violated the discovery rules since her trial counsel received the records approximately by October 2020 but failed to disclose them to the State until May 21, 2021. As a sanction, the trial court prohibited Hooper from introducing L.S.'s medical records into evidence. Nevertheless, the trial court permitted Hooper to elicit testimony from Dr. Adler from those medical records.

{¶48} Likewise, even though there is no dispute that Hooper's trial counsel disclosed Dr. Apesos's written report to the State as provided by Crim.R. 16(K), the State asserted that Hooper's trial counsel violated the discovery rules by failing to timely disclose Hooper's medical records (relied on in Dr. Apesos's report) prior to the start of trial. *See Boaston*, 160 Ohio St.3d 46, 2020-Ohio-1061, at ¶ 47 ("Here, to be clear, an autopsy report was provided to the defense well in advance of 21

days before trial, so this is not a case involving the admission of expert testimony in the complete absence of an expert report."). Importantly, "'"[t]he purpose of Crim.R. 16(K) is to avoid unfair surprise by providing notice to the [parties] and allowing [each side] an opportunity to challenge the expert's findings, analysis, or qualifications, possibly with the support of an expert who could discredit the opinion after carefully reviewing the written report."'" *Id.*, quoting *State v. Fetty*, 11th Dist. Portage No. 2011-P-0091, 2012-Ohio-6127, ¶ 36, quoting *State v. Perry*, 11th Dist. Lake No. 2011-L-125, 2012-Ohio-4888, ¶ 55.

{¶49} Here, in addition to the alleged undisclosed medical records, the State requested that the trial court exclude Dr. Apesos's report from evidence because it relied on hearsay and other inadmissible information. As an equitable remedy, the trial court excluded Dr. Apesos's report but permitted Dr. Apesos to testify *generally* as to the surgical procedure that Hooper underwent, including the typical recovery and restrictions that patients experience. Importantly, Dr. Apesos did not perform Hooper's surgery or examine Hooper.

{¶50} As a result, even though the trial court limited Dr. Apesos's testimony and forestalled Hooper from introducing L.S.'s medical records and Dr. Apesos's report, Hooper cannot demonstrate that the outcome of the proceedings would have been different. *See State v. Briggs*, 3d Dist. Allen No. 1-06-27, 2006-Ohio-5144, ¶ 17 (concluding that "the results of trial would not have been different even if trial

-25-

counsel had complied with the discovery rules"). That is, Hooper cannot demonstrate that the jury would have acquitted her of the endangering-children charge had Dr. Apesos's testimony not been limited or L.S.'s medical records or Dr. Apesos's report been admitted at trial.

{¶51} Significantly, the State presented the unequivocal testimony of Drs. Huber and Schlievert that L.S. suffered abusive head trauma and inflicted injury and that L.S.'s "constellation" of injuries were not consistent with Hooper's story that L.S. fell of the bed. Drs. Huber and Schlievert's testimony was bolstered by St. Rita's emergency-department staff's report of L.S.'s injuries to ACCS and by Lathem's testimony that she reported L.S.'s injuries to ACCS and the Lima Police Department since L.S.'s injuries were not consistent with Hooper's explanation as to how her injuries occurred. Likewise, Detective Woodworth's testimony that L.S.'s injuries were not the result of an accident augmented the State's theory of the case.

{¶52} Nevertheless, Hooper was *not* precluded from presenting her defense strategy. Specifically, Hooper elicited testimony from Dr. Adler from L.S.'s medical records regarding L.S.'s recovery; generated testimony from Dr. Apesos regarding the surgical procedure Hooper underwent; and presented her own testimony regarding the complications she experienced from that surgical procedure. Yet, Hooper does not offer any argument as to how the excluded

evidence would have aided her defense. *See State v. Dawson*, 9th Dist. Summit No. 28311, 2017-Ohio-2833, ¶ 28. Importantly, the jury acquitted Hooper of the felonious-assault charge. In other words, Hooper was not deprived of a fair trial. *See State v. Carter*, 3d Dist. Allen No. 1-15-62, 2017-Ohio-1233, 142. Therefore, Hooper's trial counsel was not ineffective for failing to provide reciprocal discovery to the State as required by Crim.R. 16.

{¶53} Finally, Hooper argues that her trial counsel was ineffective for failing to request a continuance in order to permit full discovery. Specifically, Hooper contends that her trial counsel was ineffective for failing to request a continuance to permit Dr. Adler "additional time to review and refute the findings" addressed in Dr. Schlievert's report. (Appellant's Brief at 8). Likewise, Hooper contends that, even though the State's February 9, 2021 "continuance was premised on the unavailability of a witness, Dr. Huber, * * * the fact that, upon review of Dr. Adler's report, the State obtained a new expert cannot be a mere coincidence." (*Id.* at 9).

{¶54} "'[T]he decision whether to request a trial continuance is debatable, and involves a strategic choice of counsel that falls "within the realm of trial strategy and tactics that will not ordinarily be disturbed on appeal."'" *State v. Wilcoxson*, 2d Dist. Montgomery No. 29053, 2021-Ohio-4339, ¶ 28, quoting *State v. Wynn*, 2d Dist. Montgomery No. 25097, 2014-Ohio-420, ¶ 90, quoting *State v. Warner*, 8th Dist. Cuyahoga No. 95750, 2012-Ohio-256, ¶ 11. "Because 'requesting

continuances is a matter of trial tactics and strategy, * * * we will not second-guess trial counsel's decision in this regard.'" *Id.*, quoting *Wynn* at ¶ 5. *See also State v. Webster*, 10th Dist. Franklin No. 20AP-171, 2021-Ohio-3218, ¶ 52.

**{¶55}** Based on our discussion above, Hooper cannot demonstrate that the outcome of her trial would have been different had her trial counsel requested (and received) such continuance. *Accord Wynn* at ¶ 91. That is, Hooper has not offered any argument as to how any additional or excluded evidence would have changed the outcome of her trial. Contrary to Hooper's argument regrading Dr. Adler, it is pure speculation that Dr. Adler would "refute" Dr. Schlievert's "findings." *See State v. McDermott*, 2d Dist. Montgomery No. 21046, 2005-Ohio-5233, ¶ 16 (acknowledging that "his argument about what an expert could have determined by reviewing the pictures is pure speculation"). Rather, the "additional information" that Hooper suggests Dr. Adler would have included in his report derived from an alternative opinion which was untimely disclosed to the State by Hooper's trial counsel. That testimony was properly excluded by the trial court under Crim.R. 16(K). *See Boaston*, 160 Ohio St.3d 46, 2020-Ohio-1061, at ¶ 71 (holding that "it is error to admit expert-opinion testimony when the expert's opinion was not set forth in a written report prepared in compliance with Crim.R. 16(K)"). Nevertheless, Hooper's suggestion that the inclusion of Dr. Adler's alternative opinion would have changed the outcome of her trial is unadulterated supposition.

*See Dawson* at ¶ 28 ("Mr. Dawson's suggestion that additional review of the body camera recording would have changed the outcome in this matter is pure speculation.").

**{¶56}** Furthermore, Hooper's contention that the State must have had an ulterior motive in seeking its February 9, 2021 continuance when it obtained Dr. Schlievert's report relates to a prosecutorial-misconduct argument, which Hooper did not properly raise here. Indeed, "a defendant has the burden of affirmatively demonstrating the error of the trial court on appeal." *State v. Stelzer*, 9th Dist. Summit No. 23174, 2006-Ohio-6912, ¶ 7, citing *State v. Cook*, 9th Dist. Summit No. 20675, 2002-Ohio-2646, ¶ 27. "App.R. 12(A)(2) provides that an appellate court 'may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A).'" *State v. Jackson*, 10th Dist. Franklin No. 14AP-670, 2015-Ohio-3322, ¶ 11, quoting App.R. 12(A)(2).

**{¶57}** Assessing the totality of the circumstances, Hooper's trial counsel may have reasonably concluded, as a legitimate tactical decision, that it was futile to request a continuance in order to permit full discovery. *See State v. Blevins*, 8th Dist. Cuyahoga No. 106115, 2018-Ohio-3583, ¶ 34. Therefore, we conclude that

Hooper failed to establish that her trial counsel was ineffective for failing to request a continuance in order to permit full discovery.

**{¶58}** Hooper's first assignment of error is overruled.

**{¶59}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**MILLER and SHAW, J.J., concur.**

**/jlr**