[Cite as *State v. Smith*, 2025-Ohio-5784.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

CASE NO. 9-24-53

v.

ROBERT LEE SMITH,

    DEFENDANT-APPELLANT.

OPINION AND
JUDGMENT ENTRY

Appeal from Marion County Common Pleas Court
General Division
Trial Court No. 23-CR-529

Judgment Affirmed

Date of Decision: December 29, 2025

APPEARANCES:

    *April Campbell* for Appellant

    *T. Parker Schwartz II* for Appellee

**WALDICK, P.J.**

{¶1} Defendant-appellant, Robert Lee Smith ("Smith"), appeals the June 24, 2024 judgment of conviction and sentence entered against him in the Marion County Court of Common Pleas, following a jury trial in which Smith was found guilty of Trafficking in Cocaine, a felony of the first degree. For the reasons set forth below, we affirm.

*Procedural History*

{¶2} This case originated on December 13, 2023, when a Marion County grand jury returned a single-count indictment against Smith. The indictment charged Smith with Trafficking in Cocaine, in an amount equal to or exceeding 27 grams but less than 100 grams, a first-degree felony in violation of R.C. 2925.03(A)(1) and (C)(4)(f).

{¶3} On December 18, 2023, an arraignment was held and Smith pled not guilty to the charge in the indictment. Over five months of pretrial proceedings then ensued.

{¶4} On June 4, 2024, a jury trial was held in the case. During the course of the one-day trial, the prosecution presented the testimony of three witnesses and introduced 25 evidentiary exhibits.

{¶5} After the State of Ohio rested its case, Smith moved for acquittal pursuant to Crim.R. 29, and that motion was overruled by the trial court. Smith then opted to present no evidence.

{¶6} Following closing arguments of counsel and instructions of law by the trial court, the jury received the case for deliberation shortly before 5:00 p.m. on June 4, 2024.

{¶7} At 6:38 p.m. on that same date, the jury returned a verdict finding Smith guilty as charged in the indictment. The trial court accepted the verdict, discharged the jurors, and ordered a presentence investigation.

{¶8} On June 21, 2024, a sentencing hearing was held. The trial court sentenced Smith to an indefinite prison term consisting of a 10-year mandatory minimum term and a potential maximum term of 15 years.

{¶9} On June 24, 2024, the trial court journalized its sentencing orders.

{¶10} On November 12, 2024, Smith filed the instant appeal, along with a motion for delayed appeal. On November 25, 2024, this Court granted Smith's motion for delayed appeal.

*Summary of Evidence Presented at Trial*

{¶11} During the State of Ohio's case-in-chief at trial, evidence was presented that on December 6, 2023, law enforcement officers assigned to the MARMET drug task force utilized a confidential informant ("C.I.") to conduct a

controlled drug buy at 584 East George Street in Marion, Ohio. Through witnesses Lieutenant Richard Wheeler and Detective Matt Baldridge, both Marion Police Department officers assigned to the task force, the prosecution presented testimony that, during a time period of approximately two hours prior to the buy on December 6, 2023, the C.I. made five monitored and recorded phone calls to a male suspect in order to arrange a purchase of $1000.00 worth of cocaine. The recordings of those phone calls were introduced in evidence at trial, and Detective Baldridge identified the two male voices on the recordings as being those of the C.I. and of Smith.

{¶12} Detective Baldridge testified that, in the first phone call, the C.I. asked, "can we still do that for the band?", with "band" being a slang term for one thousand dollars cash, and Smith answered, "yes." (Tr., 201-202). In subsequent conversations, the two can be heard discussing where and when they will meet. In the third call, Baldridge testified that Smith told the C.I., "I've got to do it up", meaning turning powder cocaine into crack cocaine, to which the C.I. replied, "I'll take it the way it is." (Tr., 203-204). Finally, the C.I said that he would get a ride, and "[d]rop over there by you, by your spot, bro." (Tr., 206).

{¶13} Detective Baldridge testified that, after the five phone calls were made, he searched the C.I., finding no money, drugs, or other contraband on the C.I.'s person. The C.I. was issued $1000.00 in cash, which Baldridge had previously photocopied in order to record the serial numbers of the bills being used

for the investigation. Detective Baldridge also equipped the C.I. with covert audio-video monitoring and recording equipment. Pursuant to the arrangements made by the C.I. with Smith, Baldridge then drove the C.I. to the area of 584 East George Street, where the C.I. was dropped off.

{¶14} While task force investigators surveilled both the C.I.'s movements and the area of 584 East George Street, the C.I. walked to 584 East George Street, entered the home there, purchased cocaine, and then left the residence. The drug transaction was monitored by investigators via the electronic equipment worn by the C.I. Just after leaving the house on East George Street, the C.I. was picked up in the area by investigators. At that time, the C.I. turned over a bag of suspected cocaine to the investigators. Another search of the C.I. was conducted by investigators, and the C.I. had no other drugs and no money in his possession.

{¶15} Immediately after the controlled buy was complete, certain task force investigators began the process of drafting a search warrant for 584 East George Street, while other members of the task force continued their surveillance of the property at 584 East George Street. After the search warrant was procured, which was approximately two hours after the buy was completed, investigators were on their way to execute the search warrant when the officers watching the house conveyed the information that Smith had just left 584 East George Street on a bicycle. As a result of that information, Detective Baldridge and another detective

located Smith riding a bicycle about a block away from 584 East George Street and placed him under arrest. Smith was wearing a very distinctive shirt, and evidence was introduced that a person wearing an identical shirt could be seen in surveillance photos taken at 584 East George Street at the time of the controlled drug buy. At the time of his arrest, Smith had $400.00 cash in his possession, although none of that cash was the money used by the C.I. to buy the cocaine.

{¶16} Investigators then served the search warrant at 584 East George Street. At that time, a male named Michael Knapp and another unidentified male were located in the residence. Upon investigators searching the home, they located two bundles of United States currency under the refrigerator in the kitchen. Each of those bundles contained $1,000.00 and one of those bundles contained the $1000.00 in cash used by the C.I. to purchase the cocaine. In the kitchen, investigators also located digital scales and plastic baggies with the corners cut off in a manner consistent with the way the corners of such plastic bags are used by drug dealers to package drugs being sold. In an upstairs bedroom, investigators found what appeared to be heroin or fentanyl.

{¶17} Subsequent to Smith's arrest, the suspected cocaine purchased by the C.I. was sent to the Forensic Science Laboratory of the City of Mansfield Police Department. Anthony Tambasco, a forensic scientist and director of the laboratory, weighed and performed an instrumental analysis of the substance at issue.

Tambasco testified that the substance weighed 27.67 grams and was found to contain cocaine.

*Assignments of Error Raised on Appeal*

**First Assignment of Error**

**The State's evidence that Smith committed cocaine trafficking was legally insufficient as a matter of law.**

**Second Assignment of Error**

**Smith's conviction should be reversed, because the evidence weighed manifestly against convicting Smith of trafficking.**

*Analysis of Assignments of Error*

{¶18} In the first assignment of error, Smith argues that his conviction for Trafficking in Cocaine was not based on sufficient evidence. In the second assignment of error, Smith argues that his conviction for Trafficking in Cocaine was against the manifest weight of the evidence. As the two assignments of error each require a review of the evidence presented at trial in light of the challenged statutory elements of the crime at issue, albeit with differing standards of review, we shall jointly address those assignments of error.

{¶19} It is well established that "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380, paragraph two of the syllabus (1997).

{¶20} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, paragraph two of the syllabus (1991). Consequently, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*. "'In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact.'" *State v. Williams*, 2024-Ohio 2307, ¶ 21 (3d Dist.), quoting *State v. Jones*, 2013-Ohio-4775, ¶ 33 (1st Dist.).

{¶21} By contrast, when determining whether a verdict was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *State v. Thompkins*, *supra*, at 387. In doing so, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id*. Nevertheless, when assessing a manifest-weight challenge, a reviewing court must still allow the trier-of-fact appropriate discretion on matters

relating to the credibility of the witnesses. *State v. Stewart*, 2023-Ohio-253, ¶ 11 (3d Dist.), citing *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119.

**{¶22}** In the instant case, Smith was convicted of Trafficking in Cocaine in violation of R.C. 2925.03(A)(1), which provides in relevant part that "[n]o person shall knowingly * * * [s]ell or offer to sell a controlled substance[.]" The indictment further alleged, and the jury found beyond a reasonable doubt, that the controlled substance trafficked by Smith was cocaine in an amount equal to or exceeding 27 grams but less than 100 grams, which is a first-degree felony pursuant to R.C. 2925.03(C)(4)(f).

**{¶23}** In the assignments of error raised on appeal concerning the sufficiency and weight of the evidence, Smith does not contend that the State of Ohio failed to prove that the basic elements of the crime were committed as charged. Rather, Smith's challenge under both assignments of error is that the prosecution failed to prove that he was the person who committed the crime.

With respect to identity, the Supreme Court of Ohio has stated as follows:

Every criminal prosecution requires proof that the person accused of the crime is the person who committed the crime. This truism is

> reflected in the state's constitutional burden to prove the guilt of "the accused" beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Like any fact, the state can prove the identity of the accused by "circumstantial or direct" evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272-273, 574 N.E.2d 492 (1991).

*State v. Tate*, 2014-Ohio-3667, ¶ 15.

{¶24} Finally, we note that "[c]ircumstantial evidence is not less probative than direct evidence." *State v. Bell*, 2025-Ohio-2489, ¶ 24 (3d Dist.), citing *State v. Dunn*, 2024-Ohio-5742, ¶ 32. "In fact, circumstantial evidence may be even more reliable than direct evidence in some instances." *Id.* "Moreover, jurors are free to rely on their common sense and experience in drawing reasonable inferences from the evidence." *Id.*

{¶25} In the instant case, Smith argues in the first assignment of err that his conviction is not supported by sufficient evidence because the confidential informant who purchased the drugs did not testify at trial and therefore the identification of Smith as the person who sold the cocaine at issue was based upon testimony provided by the investigating officers and exhibits stemming from the various forms of surveillance conducted by investigators. In support of his claim, Smith also points to the fact that he did not have the buy money in his possession when arrested two hours after the transaction, and the fact that two other persons were present at the location of the buy when officers executed the search warrant.

{¶26} Following this Court's thorough review of the trial record, we find Smith's contentions regarding the sufficiency of the evidence to lack merit. Viewing the evidence presented in the light most favorable to the prosecution, we find that a rational trier of fact could have found the essential element of identity proven beyond a reasonable doubt

{¶27} In reaching that decision, we note that the record contains an abundance of evidence establishing that Smith was the person who trafficked the cocaine to the C.I. As referenced above, Detective Matt Baldridge testified that, during the time period of approximately two hours immediately prior to the buy on December 6, 2023, the C.I. made five monitored and recorded phone calls to a male suspect in order to arrange a purchase of $1000.00 worth of cocaine. The recordings of those phone calls were introduced in evidence at trial, and Detective Baldridge identified the two male voices on the recorded phone conversations as being those of the C.I. and of Smith. Specifically, Baldridge unequivocally testified that he knew Smith's voice and that it was Smith speaking with the C.I. during each of the five phone calls, which were made by the C.I. in Baldridge's presence.

{¶28} After the phone calls were made, Baldridge searched the C.I., issued him $1000.00 in cash, and equipped the C.I. with audio-video recording equipment hidden covertly on his person. Pursuant to the arrangements made by the C.I. with Smith, Baldridge then drove the C.I. to the area of 584 East George Street, where

the C.I. was dropped off. While task force investigators surveilled both the C.I.'s movements and the area of 584 East George Street, the C.I. walked to 584 East George Street, entered the home there, purchased cocaine, and then left the residence. The drug transaction was monitored by investigators via the electronic equipment worn by the C.I. and Detective Baldridge testified at trial that it was Smith's voice that could be heard on the recording made while the C.I. was inside the residence buying the cocaine.

{¶29} In addition to the above evidence of Smith's participation in the drug transaction at issue, the State of Ohio presented evidence that, during the controlled drug buy operation, the investigators had conducted recorded video surveillance of 584 East George Street via a drone. One of the drone surveillance videos, which was admitted in evidence, showed Smith arriving at 584 East George Street prior to the controlled buy and parking the vehicle he was driving at the rear of the residence, a fact that Smith conceded at trial. The State of Ohio also introduced a still photograph captured from the drone video that showed Smith walking in the back door of 584 East George Street. The evidence established that the car driven by Smith and parked by him at that residence remained parked there after the buy was completed. Upon being searched following his arrest, Smith was found to have the key to that vehicle on a chain around his neck.

{¶30} After the controlled drug buy was completed, some of the investigators began the process of writing and obtaining a search warrant for 584 East George Street, while other task force members continued their surveillance of that residence. Approximately two hours after the buy was completed, investigators were on their way to execute the search warrant when the officers watching the house conveyed the information that Smith had just left 584 East George Street on a bicycle. As a result of that information, Detective Baldridge and another detective located Smith riding a bicycle about a block away from 584 East George Street and placed him under arrest. Smith was wearing a very distinctive shirt, and evidence was introduced that a person wearing an identical shirt could be seen in surveillance video and photos taken at 584 East George Street at the time of the controlled drug buy.

{¶31} In sum, the identification of Smith as the person on the phone making arrangements to sell drugs to the C.I. over the course of five phone calls made just prior to the buy, combined with the undisputed evidence of Smith's presence at 584 East George Street at the time of the controlled drug buy, amounts to sufficient evidence identifying Smith as the person who sold the $1000.00 worth of cocaine to the C.I. in this case.

{¶32} As we find the evidence sufficient from which a rational trier of fact could find Smith's identity proven beyond a reasonable doubt, the first assignment of error is overruled.

{¶33} In the second assignment of error, Smith utilizes the same arguments as in his first assignment of error, contending that his conviction for trafficking in cocaine was against the manifest weight of the evidence as the state did not prove identity.

{¶34} Based on the same evidence discussed above in our analysis of the first assignment of error, we determine that the jury did not clearly lose its way and create a manifest miscarriage of justice in resolving conflicts in the evidence relating to identity.

{¶35} As noted in the foregoing analysis, the State of Ohio presented the testimony of two of the investigating officers, in addition to numerous photographs and video recordings to prove the element of identity. Upon consideration of the testimony of the state's witnesses, coupled with the evidentiary exhibits establishing that Smith arranged the transaction at issue and was then present at 584 East George Street at the time the C.I. purchased the cocaine, we conclude that the element of identity, specifically Smith's, was established in a convincing fashion and was not outweighed by other evidence.

{¶36} While Smith asserts on appeal that the quality of the recorded phone calls was poor, the jury received those recordings in evidence and, thus, was able to make its own determination as to the contents of the recordings. Additionally, Detective Baldridge testified extensively as to what he heard on the recordings, while they were being made, and his unrefuted testimony served to establish that it was Smith speaking on the phone with the C.I. in each call, as well as on the recording made during the buy itself. The jury's apparent decision to credit the officer's testimony and identification of Smith's voice does not indicate that the jury clearly lost its way. The jury was able to see, hear, and evaluate Baldridge's testimony and was free to believe or disbelieve any or all of that testimony. *State v. Williams*, 2024-Ohio-2307, ¶ 27 (3d Dist.), citing *State v. Shockey*, 2024-Ohio-296, ¶ 24 (3d Dist.). A verdict is not against the manifest weight of the evidence just because the jury chose to believe the state's witnesses rather than the defense's version of the events. *State v. Hooper*, 2022-Ohio-2990, ¶ 29 (3d Dist.).

{¶37} The fact that two other persons may have been present at the George Street residence at or near the time of the controlled buy is a fact that may create some minor doubt as to the identity of the person who provided the drugs to the C.I. inside the house. However, when that fact is viewed in context with all of the other evidence pointing to Smith's participation in the drug trafficking, the definition of which pursuant to R.C. 2925.03(A)(1) includes the acts of both selling or offering

-15-

to sell a controlled substance, this Court cannot say that the evidence of other persons on the premises outweighed the evidence of Smith's involvement or created reasonable doubt as to the identity of the guilty party.  In other words, this is not an exceptional case where the evidence weighed heavily against the conviction.

{¶38} In summary, because we find that the jury did not lose its way in resolving conflicts in the evidence and did not create a manifest miscarriage of justice, the second assignment of error is also overruled.

*Conclusion*

{¶39} Having found no error prejudicial to the defendant-appellant, Robert Lee Smith, in the particulars assigned and argued, the judgment of conviction and sentence entered in the Marion County Court of Common Pleas is affirmed.

***Judgment affirmed***

**ZIMMERMAN and WILLAMOWSKI, J.J., concur.**

# <u>JUDGMENT ENTRY</u>

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

_____
Juergen A. Waldick, Judge

_____
William R. Zimmerman, Judge

_____
John R. Willamowski, Judge

DATED:
/jlm