NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-5742

THE STATE OF OHIO, APPELLANT, *v.* DUNN, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Dunn*, Slip Opinion No. 2024-Ohio-5742.]

*Criminal law—Sufficiency of the evidence—Drug trafficking—R.C. 2925.03— Sufficient evidence was presented at trial concerning the "in the vicinity of a juvenile" enhancement in R.C. 2925.03(C)(1)(b)—Court of appeals' judgment reversed.*

(No. 2023-1501—Submitted July 23, 2024—Decided December 10, 2024.)

APPEAL from the Court of Appeals for Geauga County,

No. 2022-G-0041, 2023-Ohio-2828.

_____

BRUNNER, J., authored the opinion of the court, which KENNEDY, C.J., and FISCHER, DEWINE, STEWART, and DETERS, JJ., joined. DONNELLY, J., dissented, with an opinion.

**BRUNNER, J.**

{¶ 1} This appeal requires us to consider when a drug-trafficking crime is committed "in the vicinity of a juvenile" as that phrase is used in R.C. 2925.03(C)(1)(b). The Eleventh District Court of Appeals held that there was insufficient evidence that appellee, Niquan M. Dunn, committed a drug-trafficking crime in the vicinity of a juvenile. For the reasons discussed below, we reverse the Eleventh District's judgment.

## I. Background

{¶ 2} Dunn was named in a six-count indictment in the Geauga County Common Pleas Court in March 2022. The first five counts charged him with drug-related crimes, while Count 6 charged him with possession of criminal tools.

{¶ 3} Relevant to this appeal are Counts 2 and 4. Count 2 charged Dunn with aggravated trafficking in drugs in violation of R.C. 2925.03(A)(2) and (C)(1)(b), and Count 4 charged him with trafficking in cocaine in violation of R.C. 2925.03(A)(2) and (C)(4)(b). The indictment also alleged that Dunn had committed both crimes in the vicinity of a juvenile, which had the effect of enhancing Count 2 from a fourth-degree felony to a third-degree felony, *see* R.C. 2925.03(C)(1)(a) and (b), and Count 4 from a fifth-degree felony to a fourth-degree felony, *see* R.C. 2925.03(C)(4)(a) and (b).

{¶ 4} The case proceeded to trial on July 19, 2022. Appellant, the State of Ohio, presented testimony from three witnesses: Detectives Steven Deardowski and Robert Altemus with the Geauga County Sheriff's Office and Justin Gould.

{¶ 5} The State's first witness was Detective Deardowski. He testified that on December 17, 2021, he and other law-enforcement officers executed a search warrant at Gould's home in Chardon, Ohio. Gould lived in an apartment that had been built into a garage that was detached from a house. Officers found methamphetamine during the search, so Detective Deardowski asked Gould if he would be interested in "sharing information" about who sold him the drugs. Gould

agreed to participate in a "controlled buy" in which he would purchase drugs from the same person who had sold him the methamphetamine found during the search and officers would be present observing the area during the buy. Gould called a man he referred to as "Q" and arranged to buy half a gram of methamphetamine at Gould's home in about 20 minutes. Detective Deardowski recorded the call.

{¶ 6} Gould told Detective Deardowski that Q was a black man who lived in the area and would be walking to Gould's home. Because the sale would happen imminently, Detective Deardowski and the other law-enforcement officers left Gould's home to observe the suspected seller and the transaction without being noticed. Detective Deardowski hid across the street. Within about ten minutes, he saw a man matching Gould's description of Q walking north on the sidewalk toward Gould's home. When the man reached Gould's driveway, he turned and walked toward the detached garage. Detective Deardowski identified the man for the jury as Dunn.

{¶ 7} After about a minute, Detective Deardowski saw Dunn leave Gould's home and head south on the sidewalk. Once Dunn was clear from the area, Detective Deardowski went back to Gould's home and Gould gave the detective a baggie containing the substance he had just purchased from Dunn. Testing later confirmed the substance to be methamphetamine.

{¶ 8} The State then presented testimony from Gould. His testimony generally recounted the search of his home and the controlled buy.

{¶ 9} The State's third and final witness was Detective Altemus. He testified that he followed Dunn as he left Gould's home after the controlled buy and saw him walk to a house at 430 Karen Drive. The trash company that services 430 Karen Drive was contacted and a "trash pull" was arranged, which would involve the trash company setting aside the trash it collected from the house at that address and giving the trash to the detectives so that the trash could be searched for evidence of a crime.

{¶ 10} The trash pull occurred on December 21, 2021. Detective Altemus testified that the trash pulled from the house at 430 Karen Drive contained mail belonging to multiple people, including Dunn, four "tear-off baggies," and 14 "felony baggies."

{¶ 11} Detective Altemus explained that drug traffickers often sell drugs using sandwich baggies. They place the drugs in the corner of the baggie, twist the baggie to separate that corner from the rest of the baggie, and then tear off the corner. The torn corner is easier to conceal than a whole sandwich baggie, and a "tear-off baggie" is therefore a sandwich baggie with a bottom corner missing. "Felony baggies" refer to plastic baggies that are smaller than sandwich baggies and that are used to hold an amount of drugs that would support a felony-level drug charge. According to Detective Altemus, finding tear-off baggies in the trash indicates that drugs were being prepared for distribution because a drug user would typically possess the torn corner and not the sandwich baggie with a bottom corner missing.

{¶ 12} Detective Altemus testified that he wiped one of the four tear-off baggies he found in the trash with a product designed to field test for the presence of cocaine. The baggie field tested presumptively positive for the presence of cocaine.

{¶ 13} Detective Altemus participated in a second trash pull from the house at 430 Karen Drive on January 4, 2022. Detective Altemus testified that a mirror with white residue on it and one more tear-off baggie were found in that trash. Both objects field tested presumptively positive for the presence of cocaine.

{¶ 14} After the second trash pull, detectives obtained a warrant to search the house at 430 Karen Drive and conducted the search on January 10, 2022. Detective Altemus described the house as a "single-family, one-story home with a detached garage." Shirley and Joseph Gossett answered the door and let the law-enforcement officers inside. Detective Altemus encountered two other adult

women and a four-month-old child in the living room. When asked who lived in the house; one person responded that all five of them—the Gossetts, the two adult women, and the child—lived there along with Dunn.

{¶ 15} Officers then went through the rest of the house to make sure they knew of everyone who was present. In the basement, they found Dunn asleep on the floor.

{¶ 16} Detective Altemus described the layout of the basement in detail. At the bottom of the stairs was the area where officers found Dunn, which appeared to be like a living room with a couch and chairs. Walking to the right and then taking a second right led to an area that appeared to be used for storage and as the laundry room. Walking to the left from the bottom of the stairs and then taking a second left led to a room Detective Altemus described as a kitchenette or bar area, which was separated from the laundry room by a wall.

{¶ 17} During the search of the laundry room, officers found a "makeshift closet" that included a plastic storage container with three drawers. The drawers held men's clothing, Dunn's wallet, mail belonging to Dunn, and an orange bag. Inside the orange bag was a plastic baggie containing 0.7 grams of methamphetamine and a second plastic baggie containing 2.91 grams of crack cocaine. Officers also found a digital scale with white residue on it in the storage container. Detective Altemus testified that everything found in the storage container was believed to have belonged to Dunn and not to anyone else living in the house. He also estimated that the storage container was about 15 to 20 feet from where officers found Dunn sleeping. At the conclusion of the search, officers placed Dunn under arrest.

{¶ 18} On cross-examination, Detective Altemus admitted that Dunn never identified the clothes found in the storage container as his. Detective Altemus also did not have the plastic baggies containing methamphetamine and crack cocaine or the digital scale tested for fingerprints or DNA. Detective Altemus also admitted

that anyone living in the house would have had access to the back half of the basement—the portion used for storage and as a laundry room—because that area was not separated by locked doors.

{¶ 19} After the State presented its three witnesses, it rested its case and Dunn's counsel moved for acquittal on all counts under Crim.R. 29. Among other things, counsel argued that the State had failed to present sufficient evidence that the crimes alleged in Counts 2 and 4—aggravated trafficking in drugs and trafficking in cocaine—were undertaken in the vicinity of a juvenile under R.C. 2925.03(C)(1)(b) and (C)(4)(b). The trial court denied the motion for acquittal with respect to Counts 1 through 5 but granted it on Count 6.

{¶ 20} On the second day of trial, the parties presented their closing arguments and the trial court gave its final jury instructions. The jury ultimately found Dunn guilty of Counts 1 through 5.

{¶ 21} The trial court held a sentencing hearing on September 14, 2022. It merged Count 3 into Count 2 and Count 5 into Count 4. It then sentenced Dunn to 12 months in prison on Count 1; 24 months in prison on Count 2; and 12 months in prison on Count 4. Finally, the court ordered that the sentences imposed on Counts 2 and 4 be served concurrently with each other and that the sentence imposed on Count 1 be served consecutively to the sentences imposed on Counts 2 and 4. The total aggregate sentence was therefore 36 months in prison.

{¶ 22} On direct appeal, the Eleventh District reversed the convictions in part. 2023-Ohio-2828, ¶ 28 (11th Dist.). Regarding Count 2, Dunn argued that the State had presented insufficient evidence that he had engaged in aggravated trafficking in drugs in the vicinity of a juvenile under R.C. 2925.03(C)(1)(b). The appellate court agreed.[1]

---

1. The indictment also alleged that Dunn committed the crime set forth in Count 4 in the vicinity of a juvenile, which enhances Count 4 from a fifth-degree felony to a fourth-degree felony. *See* R.C. 2925.03(C)(4)(a) and (b). Although the relevant enhancement language applies to both Counts

**{¶ 23}** The Eleventh District focused on the statutory definition of the phrase "committed in the vicinity of a juvenile" that is set forth in R.C. 2925.01(BB):

> An offense is "committed in the vicinity of a juvenile" if the offender commits the offense within one hundred feet of a juvenile or within the view of a juvenile, regardless of whether the offender knows the age of the juvenile, whether the offender knows the offense is being committed within one hundred feet of or within view of the juvenile, or whether the juvenile actually views the commission of the offense.

The appellate court concluded that the evidence here was insufficient to establish that Dunn had prepared to distribute a controlled substance for sale within 100 feet of a juvenile. 2023-Ohio-2828 at ¶ 27 (11th Dist.). It acknowledged that in a prior decision, it had concluded that the "in the vicinity of a juvenile" enhancement could be proven with evidence that a juvenile was asleep in a house when a crime was committed in that house. *Id.* at ¶ 25, citing *State v. Reuschling*, 2007-Ohio-6726, ¶ 81 (11th Dist.). The appellate court distinguished *Reuschling*, however, on the ground that the State here "never offered any evidence that the crime was committed while the baby was physically at the residence. The [S]tate only proved that the baby generally lived there." 2023-Ohio-2828 at ¶ 25 (11th Dist.).

**{¶ 24}** The Eleventh District also addressed a decision from the Sixth District Court of Appeals. *Id.* at ¶ 26, citing *State v. Flores*, 2005-Ohio-3355 (6th Dist.). In *Flores*, the Sixth District held that a violation of R.C. 2925.03(A)(2) was committed in the vicinity of a juvenile when law-enforcement officers found drugs

2 and 4, Dunn challenged on appeal only Count 2, and thus, the Eleventh District addressed only that count. We therefore limit our analysis in this opinion to the enhancement as applied to Count 2.

packaged for resale and drug paraphernalia in the suspect's house and the evidence also showed that two young children lived in that house. *Flores* at ¶ 42, 46. The Eleventh District distinguished *Flores* because in that case, "some of the children's items were found near drug paraphernalia," and the State did not present such evidence here. 2023-Ohio-2828 at ¶ 26 (11th Dist.). Instead, "the drugs and digital scale were found separately stored away in the container where [Dunn] stored all of his personal belongings; there was no evidence that the drugs or associated articles ever were near the baby or any of the baby's belongings." *Id.*

{¶ 25} The Eleventh District reached the following conclusion in this case:

> Evidence that a juvenile resides in a residence where a crime is committed is insufficient, under the definition of "vicinity of a juvenile," to prove that the crime was committed while the juvenile was present. . . . Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could not have found beyond a reasonable doubt that [Dunn] had prepared to distribute a controlled substance for sale within 100 feet of a juvenile.

*Id.* at ¶ 27. The appellate court therefore withdrew the "in the vicinity of a juvenile" enhancement on Count 2, reversed the conviction on that enhancement, and remanded the matter for resentencing on Count 2 as a fourth-degree felony instead of a third-degree felony. *Id.* at ¶ 28.

{¶ 26} The State then asked us to review one proposition of law: "The 'vicinity of a juvenile' enhancement to drug trafficking is proven beyond a reasonable doubt when a juvenile is found present and residing in the home when the evidence leading to the aggravated trafficking in drugs conviction is discovered." We accepted jurisdiction. 2024-Ohio-335.

{¶ 27} After we agreed to hear the case, the State—then represented by the Geauga County Prosecutor's Office—failed to file a merit brief. Ohio Attorney General Dave Yost timely filed an amicus curiae brief. Dunn moved to dismiss the State's appeal when the Geauga County Prosecutor's Office failed to file a merit brief. *See* S.Ct.Prac.R. 16.07(A) (the court may dismiss an appeal if appellant fails to timely file a merit brief). Yost opposed Dunn's motion and sought by motion for this court to designate his amicus brief as the State's merit brief, representing that the Geauga County Prosecuting Attorney had designated the attorney general to act as special prosecutor in the case. We granted the attorney general's motion and denied Dunn's motion to dismiss. 2024-Ohio-1794.

## II. Analysis

{¶ 28} A challenge to the sufficiency of the evidence presents a question of law, which on appeal is reviewed de novo. *See State v. Dent*, 2020-Ohio-6670, ¶ 15. Our inquiry is focused on "whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." *Id.* "In essence, sufficiency is a test of adequacy." *State v. Thompkins*, 1997-Ohio-52, ¶ 23.

{¶ 29} The attorney general argues that under established law, direct and circumstantial evidence are equally probative and the State may obtain a conviction based on circumstantial evidence alone. He contends that the appellate court effectively required the State to rely only on *direct* evidence to prove that the drug-trafficking crime was committed "in the vicinity of a child." He also argues that the appellate court failed to consider the evidence in the light most favorable to the State. The attorney general, in reviewing the evidence presented at Dunn's trial, argues that the evidence was sufficient to enable a reasonable juror to conclude that the crime was committed in the vicinity of a child. In doing so, he notes that a four-month-old child cannot leave his or her home on his or her own and that many of the child's basic needs—such as sleep and food—are typically met at home. He

argues that it was therefore reasonable for the jury to infer from those facts that the child was home when Dunn committed the drug-trafficking crime.

{¶ 30} Dunn emphasizes that the statutory definition of "committed in the vicinity of a juvenile" requires that the crime be committed within 100 feet of a juvenile or within view of a juvenile. And here, he contends that the State did not present any evidence concerning the size of the house, though it easily could have done so by introducing a floor plan or presenting testimony about distances between various points from one of the owners of the house or a law-enforcement officer. In addition, Dunn argues that for a juror to infer distance from circumstantial evidence, the State would need to provide some sort of reference point. But it did not do that here; it established only that the house was a one-story home with a basement. And while Detective Altemus testified that Dunn was found about 15 to 20 feet away from where the drugs were found, that distance did not say anything about the location of the four-month-old child.

{¶ 31} We agree with the attorney general. The Eleventh District failed to account for reasonable inferences that could be drawn from the evidence in this case. And taking those inferences into account, a reasonable juror could conclude that the "in the vicinity of a juvenile" enhancement was proved beyond a reasonable doubt.

{¶ 32} When drawing reasonable inferences from the evidence, jurors are "free to rely on their common sense and experience." *State v. Allen*, 1995-Ohio-283, ¶ 45. We have also recognized that "there can be no bright-line distinction regarding the probative force of circumstantial and direct evidence." *State v. Jenks*, 61 Ohio St.3d 259, 272 (1991), *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 1997-Ohio-355, ¶ 49, fn. 4. "'Circumstantial evidence is not less probative than direct evidence, and, in some instances, is even more reliable.' " *State v. Nicely*, 39 Ohio St.3d 147, 151 (1988), quoting *United States v. Andrino*, 501 F.2d 1373, 1378 (9th Cir. 1974). The United States Supreme

10

Court has likewise recognized that "'[c]ircumstantial evidence . . . may . . . be more certain, satisfying and persuasive than direct evidence.' " *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003), quoting *Rogers v. Missouri Pacific RR. Co.*, 352 U.S. 500, 508, fn. 17 (1957). For example, as the attorney general notes, when DNA evidence is presented as circumstantial evidence of a crime, it may be more reliable than eyewitness testimony by a person who directly observed the crime.

{¶ 33} Here, we hold that the evidence was sufficient to establish Dunn's guilt for the crime charged in Count 2. In that count, Dunn was charged with violating R.C. 2925.03(A)(2), which provides:

> No person shall knowingly . . . [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

Count 2 alleged that the drug involved was any compound, mixture, preparation, or substance included in schedule I or II, *see* R.C. 2925.03(C)(1), that the drug pertained to methamphetamine, a schedule II controlled substance, *see* Adm.Code 4729:9-1-02(C)(2), and that the offense was committed in the vicinity of a juvenile, *see* R.C. 2925.03(C)(1)(b).

{¶ 34} As discussed above, the State presented evidence that Dunn had prepared the methamphetamine for distribution. Specifically, it presented the jury with evidence that tear-off baggies were found in the trash pulls conducted from the house at 430 Karen Drive on December 21 and January 4, along with Detective Altemus's testimony that such baggies are suggestive of distribution. It also presented the jury with evidence that Dunn lived in this house, and law-enforcement

officers found Dunn sleeping in the basement when they searched the house on January 10. Officers also found methamphetamine and crack cocaine in a storage container in the basement that was about 15 to 20 feet from where Dunn was sleeping. And they found those drugs among Dunn's wallet and mail and clothing that the jury reasonably could have concluded also belonged to Dunn. In our view, this evidence was amply sufficient to enable a reasonable juror to conclude that Dunn had "prepare[d]" methamphetamine "for distribution" in violation of R.C. 2925.03(A)(2).

{¶ 35} We likewise determine the evidence to be sufficient such that a reasonable juror could find beyond a reasonable doubt that Dunn had committed the crime "in the vicinity of a juvenile" for purposes of the enhancement in R.C. 2925.03(C)(1)(b). Dunn's argument is based on the requirement that the drug-trafficking crime must have occurred within 100 feet of a juvenile. *See* R.C. 2925.01(BB). He contends that there was insufficient evidence that he committed the drug-trafficking crime while the four-month-old child was within 100 feet.

{¶ 36} We disagree. The State presented evidence that 430 Karen Drive was a one-story, single-family house and that the front door led directly into the living room. Detective Altemus also provided the jury with an understanding of the basement's layout. Specifically, his testimony showed that the front half of the basement consisted of an area that appeared to be used as a living room, while the back half consisted of two separate spaces—one area used for storage and as the laundry room and a separate area that appeared to be a kitchenette. Finally, Detective Altemus estimated that where Dunn was found sleeping in the living-room area was about 15 to 20 feet from the storage container containing the orange bag in which the drugs were found.

{¶ 37} In our view, a reasonable juror could rely on common sense and the juror's own general experience to infer from this evidence that the living room on

the first floor and other first-floor areas occupied by the child were within 100 feet of the storage container in the basement. First, jurors could reasonably infer that the one-story house was not a rambling home on a half-acre lot based on Detective Altemus's description of the house as a "single-family, one-story home" and his description of the layout of the basement. Detective Altemus's testimony made clear that the *horizontal* distance between where the drugs were found in the *back* half of the basement and where Dunn was found sleeping in the *front* half was only 15 to 20 feet. Jurors could reasonably view that as evidence that the house was more compact than a sprawling expanse. A reasonable juror would also know from experience that the height of a basement ceiling in an ordinary single-family, one-story house is normally no more than 10 feet. Taking this information together, a reasonable juror would be able to conclude that the first floor of the house at 430 Karen Drive was within 100 feet of the point in the back half of the basement where the drugs and digital scale were found and therefore the child would consistently be within 100 feet of the drugs when the child was on the first floor.

{¶ 38} A related issue—and one the appellate court focused on—relates to timing: Was there sufficient evidence that the four-month-old child was present when Dunn prepared the methamphetamine for distribution? The appellate court concluded there was not, but we find its reasoning to be erroneous. The appellate court first noted that the State had presented no *direct* evidence that the child was present when Dunn prepared the drugs for distribution. *See* 2023-Ohio-2828 at ¶ 25 (11th Dist.) ("Here, the state never offered any evidence that the crime was committed while the baby was physically at the residence. The [S]tate only proved that the baby generally lived there."). But as the attorney general points out, the State had no obligation to present *direct* evidence on this issue. It was permitted to establish that the drug-trafficking crime was committed "in the vicinity of a child" using circumstantial evidence alone. *See Nicely*, 39 Ohio St.3d at 151 ("It is . . .

well-settled under Ohio law that a defendant may be convicted solely on the basis of circumstantial evidence.").

{¶ 39} The appellate court also does not seem to have considered the reasonable inferences jurors could draw from the evidence presented by the State. First, the evidence showed that Dunn's drug activity was ongoing in December 2021 and early January 2022. He personally sold methamphetamine to Gould in a controlled buy on December 17. The trash pulls from the house at 430 Karen Drive on December 21 and January 4 revealed a total of five tear-off baggies, 14 felony baggies, and a mirror with a white powder on it that tested presumptively positive for the presence of cocaine. As Detective Altemus explained, that evidence showed that drugs were being prepared for distribution. Additional evidence of distribution was then found in the search of the house on January 10 when officers found methamphetamine, crack cocaine, and a digital scale situated among Dunn's possessions such as his wallet. Based on these facts, jurors could have reasonably inferred not just that Dunn had sold drugs but that it was his habit to prepare the drugs he sold while he was at home.

{¶ 40} The State's evidence also supports a reasonable inference that the four-month-old child who lived in the house was in the house when Dunn prepared at least some of the drugs for distribution. As the attorney general explains, a reasonable juror relying on experience and common sense could recognize that a four-month-old child cannot come and go from a residence at will as an adult would. Such a young child also has certain basic needs—for example, sleep, food, shelter from the elements, bathing, diapering, and other forms of care—that are typically met at home. Given that jurors here were instructed to use common sense when considering the evidence, these realities that relate to a baby, especially to a baby in the initial months of life, reasonably could have been considered by the jury in concluding that the four-month-old child in this case spent most of December 2021 and January 2022 at home.

{¶ 41} Finally, jurors could have drawn an inference from the fact that the drugs were found hidden in the back half of the basement. Based on the secluded nature of that part of the basement, a reasonable juror could have concluded that Dunn would have felt free to prepare drugs for distribution while the juvenile and the other adults were in the house on the first floor.

{¶ 42} Viewing all this evidence together and in a light most favorable to the State, we hold that a reasonable juror could conclude that the four-month-old child was present in the home when Dunn engaged in the conduct underlying the crime charged in Count 2.

### III. Conclusion

{¶ 43} For these reasons, the Eleventh District Court of Appeals erred by holding that the State had presented insufficient evidence on Count 2 concerning the "in the vicinity of a juvenile" enhancement in R.C. 2925.03(C)(1)(b). We therefore reverse the court of appeals' judgment.

Judgment reversed.

_____

**DONNELLY, J., dissenting.**

{¶ 44} This case asks whether the State of Ohio presented sufficient evidence to convict Niquan Dunn of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(2) and (C)(1)(b). The operative question here is not whether the State presented sufficient evidence that Dunn had engaged in drug trafficking, but whether it presented sufficient evidence that the drug trafficking occurred "in the vicinity of a juvenile" under R.C. 2925.03(C)(1)(b). The majority opinion concludes that the State presented sufficient evidence of the location element because the jury could have made reasonable inferences based on the evidence offered at Dunn's trial. I think the majority's reliance on these inferences goes too far, and so I agree with the judgment of the Eleventh District Court of Appeals that there is insufficient evidence to support the "in the vicinity of a juvenile"

enhancement under R.C. 2925.03(C)(1)(b) of Dunn's conviction of aggravated trafficking in drugs. Thus, I respectfully dissent.

{¶ 45} When evaluating a challenge to the sufficiency of the evidence supporting a conviction, a reviewing court asks whether the evidence at trial, "when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." *State v. Dent*, 2020-Ohio-6670, ¶ 15. To prove beyond a reasonable doubt the elements of aggravated trafficking in drugs as set forth in Count 2 of the indictment, the State needed to present evidence not only that Dunn had committed the acts defining the offense of drug trafficking under R.C. 2925.03(A)(2), but also that he had committed those acts "in the vicinity of a juvenile" under R.C. 2925.03(C)(1)(b), which means "within one hundred feet of a juvenile or within the view of a juvenile," R.C. 2925.01(BB). The record contains evidence that Dunn had engaged in drug trafficking under R.C. 2925.03(A)(2): Trash pulled from Dunn's residence contained "baggies" often used in drug distribution, and during a search of the residence, law-enforcement officers discovered methamphetamine and crack cocaine in a plastic storage container near where they encountered Dunn sleeping. The evidence also shows that at the time of the search, a four-month-old child resided in the same house as Dunn. But I am not convinced that the evidence shows that Dunn had engaged in drug trafficking in the vicinity of that child.

{¶ 46} In concluding that the State presented sufficient evidence that Dunn had engaged in drug trafficking in the vicinity of a juvenile, the majority points to reasonable inferences the jury could have formed based on the evidence offered at trial. First, the majority focuses on whether Dunn committed the acts within 100 feet of a juvenile. Beyond the presence of drugs and drug paraphernalia at Dunn's residence, the majority points to testimony that the residence in which Dunn lived was "a one-story, single-family house," majority opinion, ¶ 36. This was enough, reasons the majority, for the jurors to use their knowledge of the world and of

single-family dwellings to find that while in the house, the child would have always been within 100 feet of where the drugs were found. *See id.* at ¶ 37. Second, the majority addresses whether the child was present in the home when Dunn undertook his drug-trafficking activities. Once again, relying on inferences jurors may make from their knowledge of the world, the majority concludes that the jurors could have reasoned that the child was present when Dunn was in the home preparing drugs for distribution because four-month-old infants lack volition of their own and the intense needs of newborns are met at home. *See id.* at ¶ 40. Considering all these inferences together, the majority concludes that a reasonable juror could find that all the elements of drug trafficking in the vicinity of a juvenile had been proven. *See id.* at ¶ 42.

{¶ 47} To be sure, jurors may rely on circumstantial evidence to sustain a conviction. *See State v. Franklin*, 62 Ohio St.3d 118, 124 (1991), citing *State v. Nicely*, 39 Ohio St.3d 147, 154-155 (1988). And jurors may rely on their common sense and experience of the world when considering evidence and drawing inferences. *See State v. Allen*, 1995-Ohio-283, ¶ 45. But equally true is that jurors may not draw inferences that are "based solely and entirely upon another inference, unsupported by any additional fact or another inference from other facts." *Hurt v. Charles J. Rogers Transp. Co.*, 164 Ohio St. 329 (1955), paragraph one of the syllabus; *see also State v. Armstrong*, 2016-Ohio-7841, ¶ 23 (11th Dist.), quoting *State v. Payne*, 2014-Ohio-4304, ¶ 23 (11th Dist.) ("'When an inference, which forms the basis of a conviction, is drawn solely from another inference and that inference is not supported by any additional facts or inferences drawn from other established facts, the conviction is improper.' "). Even though the individual inferences that the majority opinion draws on the jury's behalf might be supported by the evidence, the majority's ultimate conclusion relies on inferences stacked on inferences.

**{¶ 48}** While the majority treats the reasonableness of each inference separately, it does not take the next step and assess the chain of inferences that it believes supports Dunn's conviction. Even if the jury could have reasonably derived from the evidence the inferences delineated in the majority opinion, the evidence does not support the ultimate inference that the majority posits: that the child was at home and within 100 feet of Dunn when he was committing the drug-trafficking crime. Rather, that ultimate inference relies on a large logical leap from two other inferences—the layout of one-story, single-family houses and the habits of infants—derived from the evidence.

**{¶ 49}** Criminal convictions are supposed to be based on established facts and not on conjecture or speculation. *See Armstrong* at ¶ 23. Similarly, in criminal trials, the burden falls on the State to prove all elements of an offense beyond a reasonable doubt. *State v. Wilks*, 2018-Ohio-1562, ¶ 122, citing *State v. Jones*, 2001-Ohio-57, ¶ 50. Having reviewed the record, I can only think that we would not be reviewing this case if the State had simply asked a few more questions of its witnesses or provided more evidence placing Dunn's drug-trafficking activities in both physical and temporal proximity to the four-month-old child. And I am concerned that the chain of inferences that the majority opinion relies on, beyond being unsupported by the evidence, merely relieves the State from its burden.

**{¶ 50}** I agree with the judgment of the Eleventh District Court of Appeals—the State failed to present sufficient evidence that Dunn had engaged in drug trafficking within 100 feet of or within the view of a juvenile. As a result, I would affirm the appellate court's judgment finding insufficient evidence to support the "in the vicinity of a juvenile" enhancement under R.C. 2925.03(C)(1)(b) of Dunn's conviction of aggravated trafficking in drugs. Because the majority opinion reaches the opposite conclusion, I respectfully dissent.

———————————

Dave Yost, Attorney General and Special Prosecutor, T. Elliott Gaiser, Solicitor General and Special Prosecutor, and Katie Rose Talley, Deputy Solicitor General and Special Prosecutor, for appellant.

Wesley C. Buchanan, for appellee.

_____