[Cite as *State v. Bell*, 2025-Ohio-2489.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
UNION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

v.

JAMYLE BELL,
a.k.a. JA'VEION JONES,

    DEFENDANT-APPELLANT.

CASE NO. 14-24-30

OPINION AND
JUDGMENT ENTRY

Appeal from Union County Common Pleas Court
General Division
Trial Court No. 2023-CR-0285

Judgment Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Decision: July 14, 2025

APPEARANCES:

    *Alison Boggs* for Appellant

    *Samantha Hobbs* for Appellee

**MILLER, J.**

{¶1} Defendant-Appellant, Jamyle Bell a.k.a Ja'veion Jones ("Bell"), appeals from the May 31, 2024 judgment of the Union County Court of Common Pleas, following a jury trial and sentencing. Bell argues that his sentence is contrary to law because the trial court failed to consider and balance certain sentencing factors. He also argues that the jury's verdicts are against the manifest weight of the evidence. For the reasons that follow, we affirm in part, reverse in part, and remand for a limited resentencing.

## I. FACTS AND PROCEDURAL HISTORY

{¶2} On December 21, 2023, the Union County Grand Jury indicted Bell on six counts and an accompanying firearm specification:

> Count One – Felonious assault in violation of R.C. 2903.11(A)(2), a second-degree felony, with an accompanying firearm specification pursuant to R.C. 2941.146(A);
>
> Count Two – Having weapons while under disability in violation of R.C. 2923.13(A)(2), a third-degree felony;
>
> Count Three – Improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(A), a fourth-degree felony;
>
> Count Four – Obstructing official business in violation of R.C. 2921.31(A), a second-degree misdemeanor;
>
> Count Five – Falsification in violation of R.C. 2921.13(A)(3), a first-degree misdemeanor; and
>
> Count Six – Tampering with evidence in violation of R.C. 2921.12(A), a third-degree felony.

The charges arose from a December 11, 2023 incident on U.S. Route 33 and its aftermath.

{¶3} The case proceeded to trial on April 1 and 2, 2024. During the trial, M.V. testified he was driving behind a sport utility vehicle (SUV) when a bottle flew out of a window on the SUV's driver's side. The bottle struck the windshield of M.V.'s truck, which made M.V. angry. He drove beside the SUV, swerved toward it to get its attention, and started yelling at the people inside. He saw a black male driving the SUV and a black female in its passenger seat. It appeared to M.V. that they were raising their hands and yelling back at him. M.V. then sped in front of the SUV.

{¶4} According to M.V., as he approached his exit, the SUV started to pass him with its passenger-side windows down. He saw the driver raise his arm, heard a loud bang, and felt something strike his leg. The SUV kept driving while M.V. stopped his truck to assess what had happened. M.V. verified that he had not been shot, but there was a bullet hole in his truck's outer door panel. It turned out that a bullet had penetrated the outer panel, causing a section of the inner panel to blow out and strike M.V.'s left leg. M.V. called 911 and provided a description of the SUV, its driver, and its passenger.

{¶5} A sheriff's deputy testified that she stopped Bell's SUV based on M.V.'s call and description. Bell was driving the SUV, with a black female in its passenger seat. It turned out there also was a child in the driver's side back seat of

Bell's SUV. Bell gave the deputy a false name (Ja'veion Jones) and a false date of birth that indicated he was only a 17-year old juvenile. Bell also told the deputy there was no gun in the vehicle. However, upon searching the vehicle, deputies found an unspent bullet in the back seat and an operable gun in the locked glove compartment. Another deputy testified that the gun contained a bullet in its chamber, and that the bullet in the chamber was consistent with both the unspent bullet found in the back seat and with a bullet casing later found underneath the vehicle's passenger seat. The gun was a nine-millimeter handgun.

{¶6} Bell consented to a gunshot residue test (GSR test) of his hands. The test came back positive for the presence of gunshot residue. Additionally, a photo of the license plate of Bell's SUV appeared to be consistent with a photo from M.V.'s dashboard camera of the license plate of the SUV involved in the incident. The color, make, and model of the vehicles in the pictures also appeared to be consistent.

{¶7} A detective testified that he interviewed Bell, who indicated he had provided the false name and false date of birth because he wanted to go to juvenile lockup instead of jail. Due to the false information, the detective had to correct the charges against Bell. According to the detective, Bell also told him that M.V.'s truck had swerved at him, the occupants of his SUV were scared, and the gun found in his SUV was his cousin's gun. Additionally, the detective testified that the size of the bullet hole in the truck's door was consistent with a nine-millimeter shot,

although he admitted it was also consistent with some other bullet sizes. A sheriff's deputy testified that the hole in the truck's door was consistent with a bullet hole, and the area of the bullet hole and damage on the interior of the driver's side door was consistent with the injuries to M.V.'s leg.

{¶8} The jury returned guilty verdicts on all counts and the firearm specification. On May 30, 2024, the trial court held a sentencing hearing. During that hearing, Bell's counsel addressed statutory sentencing factors under R.C. 2929.12(B), (C), (D), and (E). This included Bell's counsel acknowledging he did not know if any of the factors under division (E) applied given what was set forth in the pre-sentence investigation report. (*See* May 30, 2024 Tr. at 15-16). Bell spoke directly to the judge at the sentencing hearing, during which Bell said that he took full responsibility for his part in the situation and would like to apologize to the victim and the court. The trial court then explained it had reviewed the pre-sentence investigation report (among other items) and specifically said it had reviewed and considered the sentencing factors under R.C. 2929.12(B), (C), and (D). The trial court also made various statements relating to factors in division (E), such as how Bell was previously adjudicated a delinquent child and had committed various offenses prior to committing the offenses in this case.[1] Additionally, the trial court's sentencing journal entry states:

---

[1] Bell stipulated at trial to being under disability for purposes of Count 2.

-5-

> The Court has considered the record, oral statements, the pre-sentence report, the victim impact statement, the statements and/or recommendations made by the State of Ohio, the statements and/or recommendations of the Defendant's counsel, the purposes and principles of sentencing under R.C. 2929.11, the seriousness and recidivism factors relevant to the offense and offender pursuant to R.C. 2929.12, and the need for deterrence, incapacitation, rehabilitation and restitution.

(May 31, 2024 Judgment Entry at 2). The entry went on to identify the trial court's specific findings regarding which factors applied pursuant to R.C. 2929.12(B), (C), (D), (E), and (F).

{¶9} Finally, the trial court decided that Counts 1 and 3 merged for sentencing purposes and therefore did not impose a sentence for Count 3. It then sentenced Bell to an indefinite term of seven to ten-and-a-half years in prison on Count 1, five years in prison for the specification associated with Count 1, 36 months in prison on Count 2, 90 days in jail on Count 4, 180 days in jail on Count 5, and 12 months in prison on Count 6. The trial court ordered that the prison terms for the specification associated with Count 1, offense in Count 1, and offense in Count 2 would run consecutively, for a total aggregate prison sentence of 15 to 18-½ years. This appeal followed.

## II.   ASSIGNMENTS OF ERROR

Bell raises two assignments of error for our review:

**First Assignment of Error**

**The trial court's sentence is contrary to law because the court failed to consider and balance any of the statutory factors that went in favor of appellant and therefore must be reversed.**

**Second Assignment of Error**

**The jury's verdict is against the manifest weight of the evidence.**

III. **DISCUSSION**

A. **First Assignment of Error**

{¶10} In the first assignment of error, Bell claims that his sentence is contrary to law for two reasons. First, he contends the trial court failed to properly consider and balance all sentencing factors in R.C. 2929.12, particularly divisions (C) and (E). Second, Bell contends the trial court failed to make the necessary findings pursuant to R.C. 2929.14(C)(4) to run the sentences for the offenses in Counts 1 and 2 consecutively. We separately address each of these contentions.

1. **R.C. 2929.12 Sentencing Factors**

i. **Applicable law**

{¶11} R.C. 2929.12 generally deals with felony sentencing and identifies factors that a court must consider in imposing a sentence. "The Code does not specify that the sentencing judge must use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors" in the statute. *State v. Arnett*, 88 Ohio St.3d 208, 215, 2000-Ohio-302 (2000); *see also* R.C. 2929.12; *State v. Jones*, 2020-Ohio-

6729, ¶ 20 (R.C. 2929.12 does not require a trial court to make any specific factual findings on the record).

{¶12} The statute governing appeals based on felony sentencing guidelines, R.C. 2953.08, "defines the parameters and standards—including the standard of review—for felony-sentencing appeals." *State v. Marcum*, 2016-Ohio-1002, ¶ 21. "[A]n appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statues [identified in R.C. 2953.08(G)(2)(a)] or that the sentence is otherwise contrary to law" pursuant to R.C. 2953.08(G)(2)(b). *Id.* at ¶ 1; *see also* R.C. 2953.08(G).

{¶13} Yet, in considering R.C. 2929.11 and 2929.12 as they relate to felony-sentencing appeals, the Supreme Court of Ohio has further limited appellate review. It explained that, although subdivision (a) of R.C. 2953.08(G)(2) "permits an appellate court to modify or vacate a sentence if the appellate court clearly and convincingly finds that the record does not support the sentencing court's finding under certain specified statutory provisions," R.C. 2929.11 and 2929.12 are *not* among the relevant statutes identified in R.C. 2953.08(G)(2)(a). *State v. Johnson*, 2021-Ohio-1768, ¶ 12 (3d Dist.), citing *Jones* at ¶ 28. With respect to subdivision (b) of R.C. 2953.08(G)(2), "an appellate court's conclusion that the record does not support a sentence under R.C. 2929.11 or 2929.12 is not the equivalent of a conclusion that the sentence is 'otherwise contrary to law' as that term is used in

R.C. 2953.08(G)(2)(b)." *Jones* at ¶ 34; *see also Johnson* at ¶ 12. We have clarified that, pursuant to *Jones*, an appellate court errs if it modifies or vacates a sentence "'based on the lack of support in the record for the trial court's findings under R.C. 2929.11 and 2929.12." *Johnson* at ¶ 12; *see also State v. Dorsey*, 2021-Ohio-76, ¶ 17-18 (2d Dist.). Ultimately, "[a] sentence imposed within the statutory range is not contrary to law as long as the trial court considered the purposes and principles of felony sentencing contained in R.C. 2929.11 and the sentencing factors contained in R.C. 2929.12." *Johnson* at ¶ 9.

### ii. Analysis

{¶14} Bell specifically argues that the trial court failed to consider R.C. 2929.12(C)(1), (C)(2), (C)(4), (E)(4), and (E)(5). For example, he claims the victim's actions induced Bell to react the way he did and that Bell acted under a strong provocation in believing his passengers' safety was in jeopardy due to the victim's actions in potentially running Bell's SUV off the road. Bell therefore avers the trial court actually did not consider those statutory factors—despite the trial court stating in its sentencing entry that it did consider them. (May 31, 2024 Judgment Entry at 2; *see also* May 30, 2024 Tr. at 20-22).

{¶15} The record shows that the trial court considered the statutory factors set forth in R.C. 2929.12—including those that Bell complains about—when it sentenced Bell. *See Johnson*, 2021-Ohio-1768, at ¶ 14 (3d Dist.) (a trial court's statement that it considered the required statutory factors, without more, is sufficient

to fulfill its obligations under the sentencing statutes).  The trial court's sentencing entry explicitly stated that it considered the factors.  Furthermore, the trial court specifically discussed several of those factors at the sentencing hearing, including referencing Bell's previous adjudication as a delinquent child and commission of various offenses prior to committing the offenses in this case.  *See State v. Hurley*, 2014-Ohio-2716, ¶ 73 (3d Dist.) (trial court adequately considered the appropriate sentencing factors, despite not mentioning R.C. 2929.11 or 2929.12 during the sentencing hearing, where the trial court explicitly considered the factors in its judgment entry and made statements relating to a couple of the factors during the hearing); *see also Arnett*, 88 Ohio St.3d at 215.  We also note that the judge was present throughout Bell's trial and, therefore, heard all of the evidence presented.  As a result, we disagree with Bell's argument that his sentence is contrary to law based on an alleged failure to consider and balance some of the R.C. 2929.12 factors.[2]  *See Johnson*, 2021-Ohio-1768, at ¶ 12-17 (defendant's sentence was not contrary to law where it fell within the statutory range and the record indicated the trial court fulfilled its obligation of considering R.C. 2929.11 and 2929.12).

## 2.    R.C. 2929.14 Consecutive Sentence Factors

{¶16} Turning to the second contention raised by Bell in his first assignment of error, he argues that the trial court did not "vocalize" any of the factors for

---

[2] Bell does not argue his sentence was outside the permissible statutory range.

consecutive sentencing during the sentencing hearing in order to overcome the presumption that the sentences imposed for Counts 1 and 2 should be served concurrently. The State concedes that "the trial court's language at sentencing only evidenced two of the three factors of R.C. 2929.14(C)(4)" and, therefore, asks that we remand the case for the trial court to consider the proportionality factor. (Appellee's Brief at 5).

### i.      Applicable law

{¶17} There is a statutory presumption in favor of concurrent sentences. R.C. 2929.41(A); *see also State v. Bonnell*, 2014-Ohio-3177, ¶ 23. An exception is found in R.C. 2929.14(C), the consecutive-sentencing statute, which "requires the trial court to make statutory findings prior to imposing consecutive sentences." *Bonnell* at ¶ 26. "Specifically, the trial court must find: (1) consecutive sentences are necessary to either protect the public or punish the offender; (2) the sentences would not be disproportionate to the offense committed; and (3) one of the factors in R.C. 2929.14(C)(4)(a), (b), or (c) applies." *State v. Elliston*, 2014-Ohio-5628, ¶ 12; *see also* R.C. 2929.14(C)(4)(c).

{¶18} "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *Bonnell* at ¶ 37.

## ii.     Analysis

{¶19} The May 31, 2024 sentencing entry makes the requisite consecutive-sentence findings.  However, the trial court did not verbally state all of the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing.  At the very least, it failed to find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public.  R.C. 2929.14(C)(4); *Bonnell* at ¶ 37.  Accordingly, we are obligated to vacate the portion of the trial court's judgment that imposed consecutive sentences with respect to the prison term of 7 to 10.5 years for Count 1 and the prison term of 36 months for Count 2, and we remand for the limited purpose of resentencing Bell only with respect to the issue of whether those two sentences should be served consecutively. *State v. Tolbert*, 2023-Ohio-532, ¶ 10 (8th Dist.) ("the proper remedy when a trial court imposes consecutive sentences without making the requisite statutory findings is to vacate the sentence and remand the matter to the trial court for the limited purpose of considering whether consecutive sentences are appropriate under R.C. 2929.14(C)(4) and to make the necessary findings").  On remand, the trial court shall consider whether consecutive sentences for those offenses are appropriate under R.C. 2929.14(C)(4), and, if so, shall make the required statutory findings on

the record at resentencing and incorporate its findings into a sentencing entry.[3] *State v. Gable*, 2024-Ohio-293, ¶ 14, 16 (12th Dist.).

**{¶20}** Bell's first assignment of error is sustained, in part, and overruled, in part.

### B.    Second Assignment of Error

**{¶21}** In the second assignment of error, Bell generally argues that the jury's verdict was against the manifest weight of the evidence. However, Bell only attacks an alleged lack of evidence that the bullet came from his vehicle and that, even if it did come from his vehicle, that he ever handled the gun. He points out the lack of evidence of "a flash seen at some point coming from" his SUV, the lack of a photo showing a raised arm holding a gun, and the lack of his DNA or fingerprints on the gun found in his SUV. (Appellant's Brief at 13-14). Thus, Bell's contentions do not implicate the last three counts.

### 1.    Standard of Review

**{¶22}** The "manifest-weight-of-the-evidence standard of review applies to the state's burden of persuasion." *State v. Messenger*, 2022-Ohio-4562, ¶ 26. "[W]e review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest

---

[3] Our decision does not impact the trial court's ability to impose the five-year prison term for the *specification* associated with Count 1 or running that term consecutively. Bell did not raise any issue concerning the sentence for that specification.

miscarriage of justice that we must reverse the conviction and order a new trial." *State v. Wilks*, 2018-Ohio-1562, ¶ 168. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting" evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). Yet, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119. To reverse a judgment from a jury trial on the weight of the evidence, all three appellate judges must concur. Ohio Const., art. IV, § 3(B)(3).

### 2. Analysis

{¶23} The State presented considerable evidence at trial that the bullet that struck M.V.'s truck and caused injury to his leg came from Bell's SUV and that Bell handled the gun. Concerning the bullet coming from Bell's vehicle, evidence at trial included that M.V.'s description of the SUV matched Bell's SUV; the license plate of the SUV in M.V.'s dashboard camera photo appeared to match Bell's SUV; M.V. testified that a black male was driving the SUV and the driver raised his arm before M.V. heard a loud bang and felt something strike his leg; there was a bullet hole in the truck's outer door panel that was consistent with a bullet from a nine-millimeter gun; and law enforcement found a loaded nine-millimeter gun in Bell's

SUV along with both a spent and unspent bullet casing matching that gun. Concerning Bell handling the gun, evidence at trial included that Bell lied to law enforcement about there not being a gun in his SUV; M.V. testified it was the *driver* of the SUV who raised his arm before M.V. heard a loud bang and felt something strike his leg; and the GSR test of Bell's hands came back positive for gunshot residue.

{¶24} Circumstantial evidence is not less probative than direct evidence. *State v. Dunn*, 2024-Ohio-5742, ¶ 32. In fact, circumstantial evidence may be even more reliable than direct evidence in some instances. *Id.* Moreover, jurors are free to rely on their common sense and experience in drawing reasonable inferences from the evidence. *Id.* We also note that circumstantial evidence can be used to successfully identify a perpetrator. *E.g., State v. Nurein*, 2022-Ohio-1711, ¶ 9, 55 (3d Dist.) (rejecting manifest-weight-of-the-evidence argument premised on mistaken identity for felonious assault and other charges); *State v. Bias*, 2022-Ohio-4643, ¶ 36, 54 (10th Dist.) ("[a]s with any other element of a crime, identity of the perpetrator may be established by direct or circumstantial evidence").

{¶25} Upon reviewing the record and applying the standard set forth above, we find that Bell's convictions were not against the manifest weight of the evidence. The jury did not clearly lose its way and create a manifest miscarriage of justice in resolving conflicts in the evidence when it found Bell guilty.

{¶26} Bell's second assignment of error is overruled.

## IV.    CONCLUSION

**{¶27}** For the foregoing reasons, Bell's first assignment of error is sustained, in part, and overruled, in part.  We vacate the portion of the trial court's judgment that imposed prison terms for the offenses in Count 1 and Count 2 *consecutively*. Bell's second assignment of error is overruled.  Having found error prejudicial to the appellant in the particulars assigned and argued, we remand this cause to the trial court for the limited purpose of resentencing Bell as outlined above.  In all other respects, we affirm the judgment of the Union County Court of Common Pleas.

*Judgment Affirmed in Part,*
*Reversed in Part, and*
*Cause Remanded*

**WALDICK, P.J. and ZIMMERMAN, J., concur.**

**/jlm**

Case No. 14-24-30

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, it is the judgment and order of this Court that the judgment of the trial court is affirmed in part and reversed in part with costs assessed equally between Appellant and Appellee for which judgment is hereby rendered. The cause is hereby remanded to the trial court for further proceedings and for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

_____
Mark C. Miller, Judge


_____
Juergen A. Waldick, Judge


_____
William R. Zimmerman, Judge

DATED:
/jlm